# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ROBERT TODD HUNTER,

    Plaintiff,

      v.

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE STRUCTURED ASSET INVESTMENT LOAN TRUST 2005-8, *et al.*,

    Defendants.

Civil Action No. 09–1205 (CKK)

## MEMORANDUM OPINION
(March 22, 2010)

*Pro se* Plaintiff Robert Todd Hunter brings this action against Defendants U.S. Bank, National Association ("U.S. Bank") and The Structured Asset Investment Loan Trust 2005-8 to quiet title to property he owned in Pennsylvania that was foreclosed upon by U.S. Bank. Hunter claims that he is entitled to a judgment of quiet title because the foreclosure was invalid, for a variety of reasons. Defendants have filed a Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Defendants contend that Hunter is improperly seeking to appeal a Pennsylvania court judgment and that this Court lacks jurisdiction under the *Rooker-Feldman* doctrine; alternatively, Defendants argue that Hunter's claims are barred by *res judicata* and also fail to state a claim for relief. Hunter has filed a [7] Motion to Deny Defendants' Motion to Dismiss Complaint, which the Court construes as an opposition to Defendants' motion.[1] Defendants have filed a reply, and

---

[1] On September 2, 2009, the Court ordered Hunter to file a proper opposition to Defendants' motion, which Hunter did on September 14, 2009. The substance of Hunter's

the motion is ripe for adjudication. Having considered the parties' filings and the applicable legal authorities, the Court finds that it lacks jurisdiction over Hunter's Complaint under the *Rooker-Feldman* doctrine because Hunter is effectively seeking to appeal an adverse state court judgment. Accordingly, the Court shall GRANT Defendants' [5] Motion to Dismiss and DENY Hunter's [7] Motion to Deny.

## I. BACKGROUND

This action concerns property that Hunter owned at 1215 Green Ridge Road, Orrtanna, Pennsylvania (the "Property"). Compl. ¶ 3. On June 30, 2005, Plaintiff executed a mortgage note (the "Note") with non-party BNC Mortgage, Inc., secured by the Property, in exchange for a $153,000 loan. *Id.* ¶¶ 3, 67. In 2007, the mortgage was sold and assigned to U.S. Bank as trustee for the mortgage-backed security in which the mortgage was pooled, a trust identified as Structured Asset Investment Loan Trust 2005-8 (the "Trust"). *Id.* ¶¶ 4, 30.

On August 3, 2007, U.S. Bank, as trustee for the Trust, filed a Complaint in Mortgage Foreclosure against Hunter in the Adams County, Pennsylvania Court of Common Pleas. *See* Compl., Ex. F (Complaint in Mortgage Foreclosure). The Complaint in Mortgage Foreclosure alleged that U.S. Bank was the legal owner of the mortgage and was in the process of formalizing an assignment, and that the mortgage and any assignments were matters of public record. *Id.* ¶ 3. The Complaint alleged that Hunter stopped making monthly payments of principal and interest in April 2007 and therefore the mortgage was in default. *Id.* ¶ 5. U.S. Bank sought an *in rem* judgment against Hunter for $158,603.53 plus interest and other costs and the foreclosure and

---

opposition is identical to his Motion to Deny, except for the addition of two paragraphs of argument and a request for an increased amount for sanctions. *See* Pl.'s Opp'n at 9, 11. Accordingly, the Court shall refer only to Hunter's opposition.

2

sale of the Property. *Id.* at 6. A default judgment was entered against Hunter for $163,200 on December 6, 2007. *See U.S. Bank Nat'l Ass'n v. Hunter*, Civ. No. 2007-SU-0000931 (Adams Cty. Ct. Com. Pl. Dec. 6, 2007) (default judgment).[2] The Property was subsequently sold at a Sheriff's sale.

On June 10, 2008, U.S. Bank filed a civil complaint for ejectment against Hunter in the Adams County, Pennsylvania Court of Common Pleas. *See U.S. Bank Nat'l Ass'n v. Hunter*, Civ. No. 2008-SU-0000822 (Adams Cty. Ct. Com. Pl. filed June 10, 2008).[3] Hunter sought an enlargement of time to respond to the complaint, but the court denied his request. A default judgment was entered against Hunter and a writ of possession was issued on July 21, 2008. Hunter filed a motion to set aside the default judgment, which was denied by the Court on October 30, 2008. The writ of possession was reissued on December 3, 2008. Hunter later filed a civil action in Pennsylvania court to challenge the foreclosure but subsequently withdrew his complaint. *See* Pl.'s Opp'n ¶ 2; Defs.' Mem. at 3-4.

In his Complaint in this action, filed June 30, 2009, Hunter challenges the actions taken by the Adams County Court of Common Pleas. Hunter claims that the state court's judgment of foreclosure violated his due process rights under the Fifth and Fourteenth Amendments as well as his right to a jury trial under the Seventh Amendment. *See* Compl. ¶¶ 11, 22, 43-44, 49-55, 63-64, 79-80. Thus, Hunter claims that the foreclosure was improper and that Defendants have

---

[2] Defendants have attached the dockets from the foreclosure action and the subsequent complaint for ejectment to their Motion to Dismiss, and Hunter does not dispute their authenticity. The Court may take public notice of these dockets and consider them when deciding a motion to dismiss. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

[3] The dates and actions in this paragraph are reflected on the docket sheet attached to Defendants' motion.

engaged in "fraudulent conversion" of the Property.  *See id.* ¶ 6.

More specifically, Hunter alleges that the foreclosure was improper for a variety of reasons.  For example, Hunter claims that Defendants lacked standing to foreclose on the Property because they did not adequately prove their ownership of the Note.  *See* Compl. ¶ 5 ("Neither [U.S. Bank] nor [the Trust] have supplied any material evidence that they are the holder in due course of the note and deed of trust."); *id.* ¶¶ 93-95, 101.  Hunter also claims that Defendants failed to properly establish in state court that Hunter owed a debt.  *See id.* ¶ 96.  Hunter also claims that Defendants had no right to enforce the Note because they were not co-signers or sureties of the original Note and have no right of subrogation.  *See id.* ¶ 6, 9, 13, 48, 61-62.  Hunter also appears to claim that the Note was invalid because Hunter received the loan proceeds in the form of an account credit rather than as U.S. currency, and thus there was no valuable consideration.  *See id.* ¶¶ 7-8, 22-25, 29, 46, 67-69, 97.  Moreover, Hunter claims that only gold and silver coin are legal tender in the United States.  *Id.* ¶ 68.  Hunter claims that Defendants violated banking regulations by improperly lending their credit.  *See id.* ¶¶ 82-92.  Hunter also claims that his interest in the Property traces back to the original land grant from the British government, and therefore he has superior title and interest in the Property to anyone, including Defendants.  *See id.* ¶¶ 34-35, 56-60.

Hunter claims that Defendants did not "validate" the debt by responding to Hunter's request for proof of debt ownership.  *See* Compl. ¶¶ 31, 70, 77, 81 & Ex. C (6/10/2009 Letter from Hunter to Defendants requesting proof of ownership).  Hunter claims that validation was required by the Fair Debt Collection Practices Act and that the debt could not have been validated because there was no consideration for the loan.  *See id.* ¶¶ 70, 81.  Hunter claims to

have made an "offer of performance" to pay the debt, which was rejected by Defendants, therefore extinguishing the debt under the Uniform Commercial Code. *See id.* ¶¶ 32-33, 71, 74, 76. Hunter also claims that the foreclosure action was invalid because it was not preceded by a separate action to quiet title. *See* Compl. ¶ 64 ("The unlawful [foreclosure] action taken by the Defendant was not preceded by a final judgment in an Action to Quiet Title, and is therefore violative of my due process rights."); *id.* ¶ 65 (claiming that failure to bring quiet title action violates Pennsylvania common law and constitutional due process).

Hunter's first stated cause of action is for quiet title and seeks a declaration that Hunter has exclusive ownership rights in the Property and injunctive relief prohibiting Defendants and others from challenging his rights in the Property. *See* Compl. ¶ 98. Hunter's second cause of action is for "Slander of Title, fraudulent conversion" based on Defendants' actions. *See id.* ¶¶ 99-102. Hunter seeks a revocation of the foreclosure, abatement of all claims against him and the Property, an award of costs, and punitive damages in the amount of $80,000. *See id.* ¶¶ 104-08.

## II. LEGAL STANDARD

A court must dismiss a case pursuant to Rule 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion*, 333 F.3d at 198 (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

"At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

### III. DISCUSSION

A.  *Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)*

Defendants move to dismiss Hunter's Complaint for lack of subject matter jurisdiction on the ground that Hunter is attempting to challenge the Pennsylvania state court's judgment in the foreclosure action.[4] Because Hunter has alleged in his Complaint that the state court violated his constitutional rights, the Court construes Hunter's Complaint as presenting a constitutional challenge to a state court judgment. Hunter confirms in his opposition that "this claim tenders for review of a state court judgment." *See* Pl.'s Opp'n ¶ 8.

---

[4] Hunter does not specifically mention the ejectment action in his filings with the Court. However, Hunter's Complaint may be construed as presenting an attack on the judgment in both the ejectment action and the foreclosure action. Because consideration of the challenge to the ejectment action would not change the Court's analysis of the jurisdictional issue, the Court shall refer only to Hunter's attack on the foreclosure action.

6

It is well established that the federal courts are courts of limited jurisdiction. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), the Supreme Court held that the federal district courts lacked jurisdiction to hear a constitutional challenge to a state court judgment. *Id.* at 414-16. The Court explained that it is the province and duty of state courts to address federal constitutional questions that arise in state court proceedings, and state court judgments may only be reversed or modified by a court in an appellate proceeding. *Id.* Because Congress has provided that the district courts have only original and not appellate jurisdiction, they may not entertain suits to reverse or modify a state court judgment. *Id.* Sixty years later, in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Court reaffirmed *Rooker* and explained that the district courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Id.* at 486. The so-called *Rooker-Feldman* doctrine is based on the jurisdictional grant presently codified at 28 U.S.C. § 1257, which authorizes only the Supreme Court to exercise appellate jurisdiction over state court judgments. *See* 28 U.S.C. § 1257(a). "The *Rooker-Feldman* doctrine prevents lower federal courts from hearing cases that amount to the functional equivalent of an appeal from a state court." *Gray v. Poole*, 275 F.3d 1113, 1119 (D.C. Cir. 2002). "[E]ven a constitutional claim pled as a general attack may be so 'inextricably intertwined' with a state court decision that 'the district court is in essence being called upon to review the state-court decision.'" *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 75 (D.C. Cir. 1997) (quoting *Feldman*, 460 U.S. at 483-84 n.16, 486-87).

The *Rooker-Feldman* doctrine has limits, however. It does not preclude federal district courts from asserting jurisdiction over any claim that was previously litigated in state court.

7

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005). "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)). A claim is "independent" from a state court judgment if it seeks redress for injuries that are not directly attributable to that judgment or if the "core" of the claim is independent of the judgment. *See Stanton*, 127 F.3d at 75-76; *Levin v. Attorney Registration & Disciplinary Comm'n*, 74 F.3d 763, 766 (7th Cir. 1996). *Rooker* and *Feldman* both involved cases in which the plaintiff had litigated in state court and lost, and the Supreme Court has recently clarified that "the *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. at 283.

The Court finds that Hunter's Complaint falls squarely within the ambit of the *Rooker-Feldman* doctrine. Hunter lost the foreclosure action brought against him in state court, and he subsequently filed this action to contest the validity of that judgment and seeking damages for injuries he suffered as a result of the foreclosure.[5] Although Hunter's quiet title claim is not

---

[5] Hunter's litigation history also clearly demonstrates that he is effectively seeking to appeal the foreclosure judgment. As Hunter explains in his opposition, he filed a civil case in a Pennsylvania court collaterally attacking the foreclosure judgment, but then "filed a discontinuance without prejudice in order to file a case in this court under the rules of the common law, having realized that state court judges in Pennsylvania are stubbornly opposed to applying the rules of the common law." Pl.'s Opp'n ¶ 2. Hunter thus opted to remove his challenge from state to federal court.

styled as an appeal from the foreclosure action, it is clear from the Complaint that Hunter's claim is based entirely on the alleged impropriety of the foreclosure. All of the injuries alleged in the Complaint stem from the foreclosure of the Property, and Hunter is explicitly seeking a judgment from this Court that would have the effect of modifying the state court's judgment of foreclosure.[6] Thus, all of Hunter's claims involve either a direct attack on a state court judgment or issues that are inexplicably intertwined with a state court judgment, and there are no independent claims over which the Court has jurisdiction. This finding accords with the court's decision in *Tremel v. Bierman & Geesing, L.L.C.*, 251 F. Supp. 2d 40 (D.D.C. 2003). In that case, Judge Reggie B. Walton ruled that the *Rooker-Feldman* doctrine barred litigation of claims relating to a judicial foreclosure action that was alleged to be constitutionally defective. *Id.* at 45-46.

There is one issue that must be addressed, however, before the Court can conclude that dismissal is required. Hunter argues that the state court lacked jurisdiction in the foreclosure action and its judgment is void, and therefore the *Rooker-Feldman* doctrine does not apply in this case. *See* Pl.'s Opp'n ¶¶ 8-9. Hunter cites *In re Sun Valley Foods Co.*, 801 F.2d 186 (6th Cir. 1986), for the proposition that *Rooker-Feldman* does not bar "a collateral attack on a state court judgment which is alleged to have been produced through fraud, deception, accident, or mistake . . . ." *Id.* at 189 (quoting *Resolute Insurance Co. v. North Carolina*, 397 F.2d 586, 589 (4th Cir. 1968)). The Supreme Court in *Rooker* was confronted with a similar argument; the appellant argued that the state court judgment was "given without jurisdiction and absolutely void." 263

---

[6] The fact that Hunter defaulted in the foreclosure action does not change the analysis. The *Feldman* Court recognized that a litigant may forfeit his right to federal court review if he does not raise his constitutional claim in state court. *See* 460 U.S. at 482-83 n.16.

9

U.S. at 416. However, the Court rejected that argument as a "mistaken characterization," finding that there was "full jurisdiction in the state courts and that the bill [in equity] at best is merely an attempt to get rid of the judgment for alleged errors of law committed in the exercise of that jurisdiction." *Id.*

The Court finds that Hunter has similarly mischaracterized his attack on the state court judgment as jurisdictional. Hunter asserts that the state court judgment is void because (1) U.S. Bank never had a right of subrogation regarding the Note; (2) U.S. Bank never produced the original Note; and (3) the foreclosure action "was filed under equity jurisdiction instead of common law, as required by Article III, Section Two of the US [sic] Constitution." *See* Pl.'s Opp'n ¶ 5. Hunter's first two arguments clearly go to the merits of the foreclosure proceeding rather than to the state court's jurisdiction to entertain the claim. And Hunter's third argument displays a misunderstanding of the role of common law in the state and federal judicial systems; Article III of the U.S. Constitution governs the judicial power of the United States and does not address matters of state law. It is clear that the Adams County Court of Common Pleas had proper jurisdiction over the foreclosure action. *See* PA. CONST. art. 5, § 5 (explaining that the courts of common pleas have unlimited original jurisdiction in all cases except as otherwise provided by law); PA. R.C.P. No. 1142 (stating that actions for mortgage foreclosure may be brought only in a county in which the land is located). And the Pennsylvania courts have explained that Pennsylvania law "provides adequate remedies for obtaining direct relief for defective default judgments" in mortgage foreclosure actions. *See Del Turco v. Peoples Home Sav. Ass'n*, 478 A.2d 456, 464 n.6 (Pa. Super. Ct. 1984). Thus, Hunter has not provided grounds for an exception to the *Rooker-Feldman* doctrine's bar on review of state court judgments.

Accordingly, the Court must dismiss Hunter's Complaint without prejudice for lack of subject matter jurisdiction.[7] Because the Court lacks jurisdiction to address the merits of Hunter's claims, it does not reach Defendants' alternative arguments in favor of dismissal.

### B. Sanctions

In his Motion to Deny and his opposition, Hunter asks the Court to award sanctions "in light of the fact that the Defendants filed late and did not have a good reason for filing late, with respect to the federal case law." Pl.'s Opp'n ¶ 16. However, the Court previously ruled that Defendants' late filing did not justify a default or create an undue burden on Hunter, and the Court granted Defendants' motion for leave to file a response to the Complaint. *See* [9] Order (Aug. 31, 2009). Accordingly, sanctions are not warranted, and the Court shall deny Hunter's request for sanctions in his Motion to Deny.

### IV. CONCLUSION

For the foregoing reasons, the Court shall GRANT Defendants' [5] Motion to Dismiss for lack of subject matter jurisdiction and DENY Hunter's [7] Motion to Deny Defendants' Motion to Dismiss Complaint. The Court shall dismiss this case without prejudice. An appropriate Order accompanies this Memorandum Opinion.

Date:   March 22, 2010

*/s/*
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[7] The Court cannot dismiss Hunter's Complaint *with* prejudice, as Defendants have urged, because without subject matter jurisdiction, the Court cannot reach the merits of Hunter's claims so as to preclude litigation in a proper forum, if one exists.